UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 18 CR 643 |
| v. | ) | |
| | ) | Honorable Manish Shah |
| GIODONNI GLOVER | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

During the course of the execution of a search warrant on April 24, 2018 at the residence of defendant Giodonni Glover, law enforcement recovered a Sig Sauer, Model SP2022, .40 caliber semi-automatic pistol bearing serial number 24B201703. Law enforcement also recovered approximately 15 grams of marijuana separated in 15 bags, and other evidence of drug paraphernalia, including plastic baggies, a scale and twist ties, all indicative of drug trafficking. The defendant was charged with one count of possession of a firearm by a convicted felon and one count of possession with intent to distribute marijuana. The defendant pled guilty to both counts.

As further detailed below, the defendant has a consistent criminal history that includes a conviction for conspiracy to commit murder, in which the defendant was alleged to have shot and killed the victim. A significant term of imprisonment is needed to satisfy the factors set forth in 18 U.S.C. § 3553(a), including to reflect the seriousness of the offense, to protect the public, to provide just punishment for the offense, to deter the defendant and others, and to protect the public from further crimes of the defendant.

## I. ADVISORY CUSTODY GUIDELINES CALCULATION

As noted above, on or about December 17, 2019, the defendant entered a negotiated plea of guilty to both counts in the superseding indictment. (R. 73). As set forth in the plea agreement, (R. 73, at ¶9(b)(vi-viii)), and the PSR, (PSR, at ¶26), Counts One and Two group together and the count or group with the highest offense level – here, Count One -- controls.

<u>Offense Level – Chapter Two</u>

With respect to Count One, the parties disagreed in the plea agreement as to the defendant's base offense level. The government reserved the right to argue that, pursuant to Guideline § 2K2.1(a)(2), the defendant's base offense level was 24 because the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense, as set forth in paragraph 9(c)(i) and (iii) in the plea agreement. (R. 73, at ¶9(b)(i)). The defendant on the other hand reserved the right to argue that, pursuant to Guideline § 2K2.1(a)(4)(A), the defendant's base offense level was 20 because the defendant committed any part of the instant offense subsequent to sustaining at least one felony conviction of either a crime of violence or a controlled substance offense, as set forth in paragraph 9(c)(i). (R. 73, at ¶9(b)(i)). The probation office sided with the government. (PSR, at ¶¶27-28).

Pursuant to Guidelines § 2K2.1, the base offense level for a § 922(g) conviction is tied to the defendant's criminal history and whether a defendant has been convicted of one or more "felony conviction[s] of either a crime of violence or a

2

controlled substance offense." U.S.S.G. § 2K2.1. The parties agree that the defendant has been convicted of at least one such conviction, for which he receives criminal history points – manufacture/delivery of heroin on July 31, 2008. The parties dispute whether the defendant's conviction for conspiracy to commit murder constituted a crime of violence for purposes of the Sentencing Guidelines. Upon further review, the government adopts the position that the defendant's conviction for conspiracy to commit murder under Illinois law does *not* qualify as a crime of violence in the instant case.

The felon-in-possession Guideline defines a "crime of violence" via cross-reference "to the career-offender guideline, U.S.S.G. § 4B1.2." U.S.S.G. § 2K2.1 cmt. n.1. Accordingly, for purposes of the felon-in-possession Guideline, a crime of violence includes "any offense under federal or state law" that:

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

U.S.S.G. § 4B1.2(a). Further, a "crime of violence" includes "the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." *Id*. cmt. n.1.

Despite the commentary specifically including conspiracy to commit a crime of violence into the definition of a crime of violence, the government contends that because conspiracy to commit murder under Illinois law may be committed upon a mere agreement without any use or threat of physical force, it does not satisfy the

3

elements clause, as set forth in § 4B1.2(a)(1). *See People v. Skiles*, 115 Ill. App. 3d 816, 824 (1983) ("The essential elements of conspiracy to commit murder are intent to commit murder, agreement to do so, and an act in furtherance of the agreement. It is not necessary the act result in an offense or the intended offense be accomplished.") (internal citations omitted). The defendant's base offense level therefore is 20.

The parties agreed in the plea agreement that, pursuant to Guideline § 2K1.1(b)(6)(B), the defendant's offense level is increased by four levels because defendant used or possessed the firearm in connection with another felony offense. (R. 73, at ¶9(b)(ii)). The probation office agreed. (PSR, at ¶29).

The defendant's adjusted offense level therefore is 24.

<u>Acceptance of responsibility – Chapter 3</u>

The defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. Therefore, the defendant receives a three-level reduction pursuant to Guidelines § 3E1.1. (R. 73, at ¶9(b)(ix-x)); (PSR, at ¶¶36-37).

<u>Career offender – Chapter 4</u>

For the same reasons noted above with respect to the defendant's base offense level, the government takes the position that the defendant does not qualify as a career offender because his conviction for conspiracy to commit murder does not constitute a crime of violence under the elements clause of the Sentencing Guidelines.

<u>Criminal history category</u>

As set forth in the Plea Agreement, (R. 73, at ¶9(c)), and confirmed in the PSR,

4

(PSR, at ¶49), the defendant has six criminal history points, which places him in criminal history category III.

### Advisory Custody Guidelines Range

The government contends that a total offense level of 21, coupled with a criminal history category of III, results in an advisory sentencing guidelines range of 46 to 57 months' imprisonment.

## II. THE SECTION 3553(A) FACTORS WARRANT A SENTENCE AT THE HIGH END OF THE ADVISORY CUSTODY GUIDELINES RANGE

### a. NATURE AND CIRCUMSTANCES OF THE OFFENSE

The defendant stands convicted of possession of a firearm by a multi-convicted felon and possession with intent to distribute marijuana. While the narcotic at issue was marijuana, which at the time of the offense remained illegal under state law, and was a relatively small amount, both of these offenses are serious and are deserving of a serious sentence, especially in light of the strong evidence that the defendant was distributing marijuana.

The recovery of the gun and drugs in this case stemmed from the execution of a search warrant on the defendant's residence. Law enforcement obtained a search warrant based on the information of an informant, who advised law enforcement that, among other things, he/she knew the defendant to sell cannabis and that he/she purchased ecstasy from the defendant recently from the defendant's residence on the 5200 block of West Congress Parkway, specifically the Second Floor Apartment at 5259 West Congress. Law enforcement obtained a search warrant for the aforementioned residence on April 23, 2018, and executed it early the next morning.

The informant's information proved to be accurate, at least in part. While law enforcement did not recover any ecstasy, it did recover 15 grams of marijuana, pre-packaged for sale in 15 bags, and other evidence indicative of a person who sells drugs, including a scale, plastic baggies and twist ties. Law enforcement also recovered the Sig Sauer, Model SP2022, .40 caliber semi-automatic pistol bearing serial number 24B201703, which was loaded and in close proximity to the narcotics.

The offense here is a serious one. Firearms, and more to the point the over-proliferation of firearms and the easy access of firearms in the hands of persons who should not have them, continue to plague this City. While some felons in this City may feel a need to arm themselves in self-defense, which remains unlawful, the facts here indicate that that was not the case. Instead, in light of the proximity of the firearm to the narcotics and drug-trafficking paraphernalia, and the evidence of prior drug trafficking from the defendant's residence directly, the defendant possessed the firearm in relation to his drug-trafficking operation in his residence.

### b. HISTORY AND CHARACTERISTICS OF THE DEFENDANT

The instant case represents the defendant's seventh felony conviction, yet he is only 35 years old. The defendant's criminal history depicts a person with a consistent commitment to drug trafficking as well as one serious conviction involving active violence.

The defendant's first conviction came as a juvenile when he was convicted of possession of a controlled substance following his arrest for conducting hand-to-hand drug transactions. (PSR, at ¶43). The defendant's first adult conviction came less

6

than one year later at the age of 17, when he was convicted of manufacture/delivery of 1-15 grams of heroin. (PSR, at ¶44). According to the PSR, law enforcement observed the defendant engaged in a hand-to-hand transaction, and as they approached him, he fled, dropping 15 baggies each containing heroin along the way. (PSR, at ¶44). The defendant was sentenced to 18 months' probation, however multiple violations of probation were later filed, ultimately ending in the defendant's probation being terminated unsatisfactorily in November 2006. (PSR at ¶44).

While on probation for the above conviction, the defendant quickly returned to the streets and continued to distribute narcotics. Now 18 years old in October 2003, according to the PSR, the defendant delivered a small amount of heroin to an undercover officer in exchange for $40. (PSR, at ¶45). Upon being arrested, the defendant also possessed another three packets of heroin. (PSR, at ¶45). The defendant again received a term of probation, which, along with the term of probation stemming from his first conviction, was terminated unsatisfactorily in November 2006. (PSR, at ¶45).

While on probation for both of the above convictions, the defendant committed another offense that resulted in conviction. According to the PSR, on or about February 20, 2004, the defendant was arrested in a stolen vehicle with three other persons. (PSR, at ¶46). The defendant was charged but not arrested for this offense until several years later, and received a sentence of two days' jail. (PSR, at ¶46).

The defendant's most serious conviction came next. Now 19 years old, according to the PSR, a witness identified the defendant as a person who shot and

killed the victim on February 22, 2004 on the 1200 block of South Lawndale Avenue in Chicago. (PSR, at ¶47). As reflected in the PSR, the defendant was originally charged with murder, but it appears the charges were reduced to conspiracy and the defendant pled guilty. (PSR, at ¶47). The defendant was sentenced to eight years' custody.

On November 30, 2007, the defendant was released on parole after approximately three years. (PSR, at ¶47). Within four months, the defendant was arrested again. On March 10, 2008, law enforcement observed the defendant conducting several hand-to-hand transactions with different persons. (PSR, at ¶48). The defendant looked in the officers' direction, dropped several baggies and walked away. (PSR, at ¶48). The officers arrested the defendant and recovered the items he dropped, which included 15 small baggies containing a total of 1.5 grams of heroin. (PSR, at ¶48). The defendant also had close to $2,000 cash on hand. (PSR, at ¶48). The defendant received a significant sentence for this offense – nine years – but appeared to serve approximately half the time. (PSR, at ¶48). The defendant was released on parole on or about February 13, 2012. (PSR, at ¶48).

After the defendant's release from custody in 2012 and prior to the defendant's arrest in the instant case, the defendant enjoyed a substantial period of seeming law-abiding behavior. What is telling about this time frame though is that the defendant was not actively employed, (PSR, at ¶¶84-86) (providing no employment information for the defendant prior to 2017), which, when coupled with his consistent historical drug trafficking credentials, suggests he may have continued to sell narcotics during

8

this time frame without being detected by law enforcement.[1] Regardless, what is clear is that, in or around April 2018, the defendant slipped back into his old ways when he was arrested for the instant case. What is also clear from the defendant's criminal history and the instant criminal conduct is that his prior convictions and sentences did not fully deter him from criminal activity.

The defendant's criminal history from age 17, with the exception of the period noted above, depicts a person consistently involved in the distribution of narcotics. The same history also displays a person capable of, and willing to commit, serious acts of violence, including murder. A substantial term of imprisonment is needed here to deter the defendant and others, and to punish the defendant for his criminal conduct.

### III. TERM OF SUPERVISED RELEASE

Given the circumstances of the offense and the history and characteristics of the defendant, including the commission of numerous offenses while on some form of court supervision, the government recommends the maximum term of three years' supervised release as to Counts One and Two, to run concurrently. The government will address and reply to any specific objections made by the defendant with respect to supervised release in his sentencing memorandum.

### IV. CONCLUSION

Based on the foregoing, including the nature and circumstances of the offense

---

[1] The defendant was arrested twice during this period for narcotics-related offenses, both of which were dismissed. (PSR, at ¶¶58 & 59). In total from 2002 until the instant offense, the defendant has been arrested on seven occasions all for drug-related offenses. (PSR, at ¶¶53-59). The Court may consider these arrests in imposing its sentence on the instant offense. *See United States v. Ayesh*, 355 F. App'x 967 (7th Cir. 2009).

and the defendant's criminal history, the government recommends a sentence at the high end of the advisory custody Guidelines range.

        Respectfully submitted,

        JOHN R. LAUSCH, JR.
        United States Attorney

        By: /s/ *Timothy J. Storino*
        Timothy J. Storino
        Assistant United States Attorney
        219 S. Dearborn Street, 5th Floor
        Chicago, Illinois 60604
        (312) 353-5347

Dated: January 5, 2021